IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**TRAVIS DETWEILER**                                                                                       **PLAINTIFF**

        v.                                    Civil No.  10- 2027

**SHERIFF FRANK ATKINSON,** *et al.*                                                       **DEFENDANTS**

<u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Travis Detweiler, an inmate in the Cummins Unit of the Arkansas Department of Correction, in Grady, Arkansas, filed this civil rights action under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2005), the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

**I.      Background**

As this case is before the Court on Defendants' Motion for Summary Judgment, the Court will recite the facts pled by the non-moving party, the Plaintiff.  Plaintiff has brought this action against the Defendants in both their official and individual capacities.  ECF No.  47.

Plaintiff alleges he was delayed medical care for his broken collar bone.  Specifically, Plaintiff states that he was involved in a motor vehicle accident on July 31, 2009, and was taken to the emergency room at Sparks Medical Center in Fort Smith, Arkansas.  ECF No.  1.  While at the emergency room, Plaintiff was arrested and then taken to the Sebastian County Detention Center. *Id.*  Once at the detention center, Plaintiff did not receive any documented medical attention until August 14, 2009, and was then prescribed ibuprofen.  *Id.*  After this time, Plaintiff states he  received no further treatment, or answers or responses to his grievances, complaints, or medical requests.  *Id.*  Plaintiff further alleges he has suffered continued pain and further injury due to the delay in medical

care from Defendants. *Id.*

## II. <u>Applicable Law</u>

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56 (c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. <u>Discussion</u>

### i. <u>Official Claims</u>

Plaintiff has sued Defendants in their individual and official capacities. Plaintiff's official capacity claims are tantamount to suing Sebastian County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on respondeat superior, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.* Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official

decision making channels ." *Monell*, 436 U.S. at 690-91.

In his Response to the Motion for Summary Judgment, ECF No. 47, Plaintiff states the custom or policy leading to the violation of his constitutional rights was "cruel and unusual punishment" as well as unnecessarily "prolonged pain and suffering." Clearly, such conclusory statements can not make out a custom or policy claim.

The Plaintiff cannot sustain his Section 1983 claim against Sebastian County with just his vague and conclusory allegations that the County had unconstitutional policies. To withstand the Defendants' Motion for Summary Judgment, he must show some specific deficiency in the County's policies, which evidences a deliberate disregard for the constitutional rights of inmates. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2nd Cir. 1993) ("mere assertion . . . that a municipality has such a custom or policy [that purportedly caused a violation of the plaintiff's constitutional rights] is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference").

Moreover, to the extent Plaintiff is seeking injunctive relief, when a prisoner is no longer subjected to an allegedly unconstitutional or unlawful course of action, the prisoner's claims for declaratory and injunctive relief are moot. *Pratt v. Corr. Corp. of Am.*, 267 Fed. Appx. 482, 2008 WL 612571, *1 (8th Cir. 2008) (table decision) (concluding inmate's 1983 claims for declaratory and injunctive relief were moot when he was transferred to another facility and was no longer subject to alleged unlawful conditions); *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (section 1983 claims for declaratory and injunctive relief are moot when plaintiff is no longer subject to alleged unlawful conditions). Plaintiff's claims for injunctive relief are now moot because he is no longer incarcerated in the Sebastian County Detention Center.

### ii.     Individual Capacity Claims

To succeed on his Eighth Amendment medical claims, a plaintiff must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. *Id.* The standard for "deliberate indifference" includes an objective and a subjective component. *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (*citing Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (*quoting Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)); *see also Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citing *Camberos*, 73 F.3d at 176).

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate for his medical condition does not give rise to a colorable claim under section 1983. *Warren v. Fanning*, 950 F.2d 1370, 1373 (8th Cir.1991); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir.1990); *Courtney v. Adams*, 528 F.2d 1056 (8th Cir.1976). Likewise, plaintiff's disagreement with the diagnosis of his medical condition is insufficient to state a claim. *Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment in diagnoses and treatment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996).

Plaintiff has alleged Defendants were deliberately indifferent to his serious medical needs because he was not seen by a specialist, his requests for medical care were ignored, and Dr. Tinsman did not properly treat his shoulder injury. The Court will examine each of Plaintiff's claims in turn.

Regarding Plaintiff's claims the Defendants were deliberately indifferent because he did not see an orthopedist, neither the doctor who treated Plaintiff at the emergency room, nor Dr. Tinsman recommended that he be seen by any specialist, including an orthopedist. In fact, Plaintiff has presented no evidence that any provider recommended he go to a specialist until after Plaintiff was already transferred out of the Sebastian County Detention Center and placed in the Arkansas Department of Correction. *See* ECF No. 47-2. Plaintiff's medical records show that there was no "follow up" information provided to him from his July 31, 2007, visit to Sparks Regional Medical Center, including any need to see and orthopedist. ECF No. 47-2 at 41. The fact that Plaintiff, who has no medical training, thought he had a serious medical need that required treatment by a orthopedic specialist is insufficient to establish he had a serious medical need, or that referral to a specialist was required. Moreover, Plaintiff has offered no verifiable medical evidence to establish that he was harmed by the denial of a consultation with an orthopedist. *Cf. Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (inmate who claims about delay in medical treatment must present verifying medical evidence of detrimental effect of delay).

While the medical records do indicate that Plaintiff's fracture did not heal completely, Plaintiff has not established the non-union of his clavicle was caused by any action or inaction of Defendants. Moreover, Plaintiff has alleged no more than mis-diagnosis or malpractice by Dr. Tinsman or Nurse Laura. It is well-settled that medical malpractice does not violate the federal constitution, and that medical malpractice claims are not actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S.

97, 106 (1976) ( "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Plaintiff's prescriptions were provided to him as prescribed. ECF No. 42, ¶ 32(a). Plaintiff did see Dr. Tinsman on September 14, 2009, and the diagnosis was to reevaluate the injury in January of 2010, if there was no improvement. ECF No. . Thus, the delay in seeing Dr. Tinsman until September 14, 2009, appears to be insignificant in that no additional medical action was made, rather than to observe Plaintiff and continue as before this examination. Plaintiff has no evidence he was harmed by a delay in seeing Dr. Tinsman. In fact, Plaintiff's medical records do not indicate that Plaintiff's non-union of his clavicle fracture was caused by any delay in treatment, and certainly does not establish that any different treatment would have caused a more positive outcome.

Similarly, Plaintiff has complained the Dr. Tinsman failed to properly examine him and failed to provide him with an x-ray. Questions as to whether an X-ray or additional diagnostic techniques or forms of treatment should have been done are issues of medical judgment. *Estelle*, 429 U.S. at 293. At most, plaintiff's claims appear to be that of negligence which are not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 107.

Plaintiff states that he had prolonged pain, but the medical records show that Plaintiff received medication for pain from the date of his booking, July 31, 2009, until August 8, 2009 in the form of hydrocodone. ECF No. 42, ¶ 32. Plaintiff then received Tylenol for pain from August 28, 2009, until September 15, 2009. *Id.* Finally, Plaintiff received Ibuprofen from September 4, 2009, until February 1, 2010. *Id.* Thus, there was only a twenty-day time-frame where Plaintiff was not receiving pain medication. During this twenty-day lapse, Plaintiff states he submitted two medical requests or grievances which were ignored by Defendants. ECF No. 47-1. Plaintiff does not indicate

what these medical requests contained, including whether or not they contained any complaints of pain or request for medication. Additionally, Plaintiff has provided no evidence or allegation that Defendants knew of these medical requests but ignored them. Plaintiff did see Nurse Laura on August 28, 2009, and pain medication was prescribed. ECF No. 47, ¶ 16. Also, during this twenty-day period, Plaintiff was monitored on an hourly basis as requested by Nurse Nita. ECF No. 30-6.

Plaintiff has also claimed he was subjected to a denial of medical care when he placed requests on the following dates, but received no response or medical care: July 30, 2009; August 10, 2009; August 14, 2009; August 20, 2009; August 31, 2009; September 4, 2009; September 11, 2009; and September 13, 2009. ECF No. 47-1. Plaintiff states he gave these requests to the following deputies: Partian, Carson, Brooks, Cambell and Smitchz. *Id.* Assuming, as the Court must do in a summary judgment context, that Plaintiff's allegations he submitted these medical requests and grievances but they were not acted upon are true, Plaintiff still has not established a deliberate indifference claim against the Defendants. Defendants state there is no record of these grievances, and Plaintiff has not brought forth any evidence that the named Defendants – Dr. Tinsman, Nurse Laura, or Sheriff Atkinson knew of the requests and failed to act upon them. As stated above, deliberate indifference can not be met unless a defendant *knew* of a serious medical need and failed to act. At most, Plaintiff may have stated a claim against deputies Partain, Carson, Brooks, Campbell and Smitchz, but those individuals are not a party to this litigation.

### IV.   Conclusion

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Summary Judgment, ECF No. 28, be **GRANTED** in its entirety.

**The parties have fourteen (14) days from receipt of this report and recommendation in**

which to file written objections pursuant to 28 U.S.C. § 636 (b) (1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

**DATED** this **22nd day of February 2011.**

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
U.S. MAGISTRATE JUDGE
